Good morning, Your Honors. Good morning, Counsel. May it please the Court, my name is Christine Coverdale. I'm here at the hearing on behalf of Appellant DRIVE-IN MUSIC, Company, Inc. The main contention before the Court, especially with regard to the briefs, was the motion for summary judgment. The Court held that the thrust of the counterclaim of E. Wayne Pittman was a copyright infringement claim. Before that Court, and also before this Court, we have argued that his counterclaims were actually much more broad, and therefore, summary judgment should not have been entered. His counterclaims actually stem from a long history between Mr. Pittman and Mr. Collette. The counterclaims that were alleged by Mr. Pittman, in particular, were that DRIVE-IN actively interfered with Mr. Pittman's ability to receive royalties from third parties, as well as the fact that DRIVE-IN had apparently breached their fiduciary duties. Can I interject here? What clause or obligation under the policy are you relying on, in terms of the obligation to defend on the part of the insurance company? Okay. The coverage scope was actually under unauthorized titles, unauthorized use of titles and materials stemming from plagiarism, right to privacy, copyright infringement, unfair competition. There were several definitions that were set forth in the policy. But Pittman hadn't recorded a song with Girl Watcher without authorization. He was claiming that he was owner of the copyright. This was a property dispute by Pittman and DRIVE-IN over what apparently Mr. Kittel had sold a couple of times, reducing the overhead on it by selling it over again. So this wasn't really an infringement case. This was a property dispute case, wasn't it? In part, yes. No, no, not in part. In whole. Did Pittman ever record a version of Girl Watcher that he used a name for? Is that the claim? Well, actually, Pittman was the lead guitarist for the occasions in 1968. And he actually assigned his interest in the copyright to Buck Collette before, essentially immediately thereafter, the song was recorded. So he did not have a copyright at that particular time. He did not file for a copyright, I believe it was until 1992. And that was after DRIVE-IN had entered into its first agreement with Buck Collette. So actually, the scope of his counterclaims, which aren't necessarily artfully pled, but the scope of that case in particular, dealt with the fact that DRIVE-IN, in part as having become the successor and interest from Collette, owed these duties to Pittman, and therefore had breached those duties to account, to pay royalties, and had interfered with Pittman's own right to go out and receive royalties from third parties. Those are property disputes. Those weren't infringement disputes, were they? That is correct. In part, that is correct. And come back then to the policy. Do you have the policy in front of you? I can get it. Could you? Because I'd like to know precisely what it is in the policy you're relying on that then, in your view, puts the duty on the insurance company. Take as long as you need. Go get the policy and then tell us what the provision is that you're relying on. Thank you, Your Honor. Yes, the policy is included in a certain portion of the record. I think it's ER 754. Thank you, Your Honor. Okay, Your Honor. It's probably Clause 4. I'm sorry? It's probably Clause 4. Yes, Your Honor. The coverage agreement is actually on page 754, tab 47A, Volume 3. It's under paragraph, I guess it's 1A. It states, to indemnify you for any sums which you shall become legally obligated to pay. And then it goes on to subparagraph 4. Unauthorized use of titles, formats, etc., performance of artists or other performers or other program material embodied in your insured products or services, but only for claims based upon allegations of plagiarism, unfair competition, piracy, infringement of copyright, or violation of common law property rights in literary or music material. What common law property rights in literary or musical material are you, did Mr. Pittman allege? Mr. Pittman alleged that originally he had rights to the composition Girl Watcher, being the initial performer and writer of Girl Watcher. Mr. Pittman then later entered into an agreement with Mr. Collette back in 1968 where they shared co-ownership in written form of the Girl Watcher, and he assigned all of his rights to Mr. Collette at that time. Is there any difference between common law property rights in a musical composition and statutory copyrights? Yes, Your Honor, there is. They have been debated before this court even. With regard to most songwriters, if there is no copyright registration or if there is no trademark registration, people still have common law rights. Until there's the first performance, and then they lose it, right? That is correct, Your Honor. Well then, what are the common law rights at issue here? Well, the common law rights, part of what Pittman was asserting was that he originally had these rights in the composition. Then Driven intervened and thereafter breached certain duties that Driven had to Pittman, and therefore the rights reverted back to Pittman, both under common law and as a result of his agreement with Collette. His agreement with Collette also stated that if there was a material breach of that agreement for accountings or something along that nature, therefore all of the rights to the copyright would revert back to Pittman. And he was asserting that that agreement and all of the fiduciary duties were breached. Let's agree that Pittman is absolutely 100% right when he makes those allegations. He has a common law copyright to Girl Watcher. That is correct. But that's been performed, and it's been performed publicly. So he's lost that, right? So it's not really the basis for a claim by Pittman against Driven, is it? That is correct. But at the time of July 1, 1999, at the time of tender, he was making that assertion. That's the problem that Driven has with the district court's order, was at the time of tender to Continental, that particular issue was still in dispute. Pittman was still asserting affirmative rights to the Fourth Circuit Court of Appeals, and therefore those rights, even though the Court of Appeals eventually found part in favor of Driven and part in favor of Pittman as to ownership of the copyright, Pittman was still asserting those claims at the time of tender. He was asserting a claim in property right, but not in common law property. Our suggestion is that it's very difficult. Because of his allegations and the broad language of his allegations, our contention is that it was very difficult to establish that at the time. It turns out that he does not have common law rights. He has a 50 percent interest in the copyright. Okay. Why don't we hear from the other side? You've got a little minute and then a little time left, and we'll hear from you in rebuttal. Thank you, Your Honor. Thank you. Good morning. I'm tempted to repeat what the Fourth Circuit told Driven in one of the appellate decisions, and that is that certainly by the tender in 1999, but back in 1997, they said that this matter is much more narrow than it was before. And by the time there was a tender to Columbia Casualty, that issue had now been decided. The settlement was binding, and the only thing being litigated was an attorney fee award against Driven. And even as to that, the Court had made clear that the reason attorneys' fees were being awarded was because the settlement was binding. The reason attorneys' fees were being awarded was because Driven's position as the plaintiff in intervention, not even as a defendant, but as a plaintiff, that they had 100 percent rights, was objectively unreasonable. And for that reason, attorneys' fees were going to be assessed. And it was when attorneys' fees were going to be assessed that Driven requested the carrier be involved. But there certainly was no – I'm listening to the argument this morning, Your Honor, but the fact of the matter is there was no issue of common law property rights being litigated after 1997 or even before. The only thing being litigated was an attorney fee award based on an argument over whether a settlement had been binding. And the Fourth Circuit chastised the parties for trying to claim there was more in dispute at that point. Kennedy. Counsel, is one of your points that Driven was years late on making a claim for defense and an indemnity under the policy? Or are you abandoning that? We felt that that would be too factual to argue for summary judgment. So I wouldn't say we abandoned it, but we didn't believe it was a summary judgment issue, and we were looking for summary judgment. If the case had been tried, we could have raised that again. Because there was no evidence of any injury as a result of the delay in the record. Right, because the record is only on summary judgment. I'd like to ask you how you stand on this doctrine that co-copyright owners can't sue each other for breach of contract but must sue each other for infringement of the copyright itself. Judge Snyder's theory upon which you decided the case below. Her theory, as I understood it, was because they were co-owners, there was no potential cause of action for copyright between them. In other words, you'd have to have one side would have to have the exclusive right under the statute. And here it had been determined that they were 50-50 owners. So do you agree with that view of the law? Oh, yes. Unless there are other questions, I will submit. Okay, thank you. Your Honor, just with regard to one point. Actually, the district court did find that the thrust of Pittman's counterclaims were actually claims for copyright infringement. So that was a particular finding that she made. We're arguing that the thrust of his counterclaims were actually much broader. Everything that he was alleging was broader. But as a factual matter, at the time of the tender, where was this case? This case was actually, there had been the initial appeal of Pittman of district court's jury award in favor of Thriven. After that appeal, that is when the Fourth Circuit stated that settlement was in force and therefore Thriven should not have been awarded a jury trial and then remanded it back to the South Carolina district court for instructing the district court to enter a judgment consistent with the Fourth Circuit's opinion. It was at that time, when that first came down, when Thriven tendered. And what was remaining in dispute at that time? Attorney's fees only? No. The reason I say no is because Pittman, while Thriven did appeal the entry of attorney's fees, Pittman also appealed the district court's denial of his counterclaims against Thriven. I understand that, but it's now been remanded. And at the time of remand, is Pittman's claim still viable? I think it's gone by then. I actually believe that his claims were still viable. Although the district court did not find that, he was still asserting his counterclaims. Okay. That's our position. Okay. Thank you very much. Thank both sides for their argument. Thriven Music Company v. Columbia Casualty Company is now submitted for decision. The next case on the
judges: T.G. Nelson, W. Fletcher, Bea